UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN CIVIL LIBERTIES UNION
125 Broad Street, 18th Floor
New York, NY 10004

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF DEFENSE
1600 Defense Pentagon
Washington, DC 10301

Defendant.

No. 07-cv-______

**COMPLAINT FOR INJUNCTIVE RELIEF**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief, seeking the immediate processing and release of agency records requested by plaintiffs from defendant Department of Defense ("DoD").

2. Plaintiffs' FOIA request seeks "all records relating to the killing of civilians by U.S. forces in Iraq and Afghanistan since January 1, 2005." Plaintiffs also requested expedited processing and a waiver of all costs. Plaintiffs requested these records following published reports that U.S. Marines might have been involved in a

massacre of unarmed civilians in Haditha, Iraq, and that senior officers were suspected of suppressing information about the killings.

3. Several of the Department's components have denied expedited processing; others have failed to respond to the request for expedited processing.

4. As of the date of this filing, only the Department of the Army has produced any records. No other defendant agency has produced records in response to plaintiffs' request.

**Jurisdiction, Venue & Exhaustion**

5. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

7. Plaintiffs have exhausted administrative remedies.

**Parties**

8. Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation (collectively, "the ACLU") together comprise a national organization that works to protect civil liberties and civil rights. The American Civil Liberties Union Foundation is a 501(c)(3) organization that provides free legal representation and educates the public about civil rights and civil liberties issues. The American Civil Liberties Union is a separate non-profit, non-partisan, 501(c)(4) membership organization engaged in public education and analysis of pending and proposed legislation. As the leading defender of freedom, equality, privacy, and due process rights in the United

States, the ACLU has often provided direct representation to individuals and organizations seeking to expose government activity to public view.

9. Defendant United States Department of Defense is an agency within the meaning of 5 U.S.C. § 552(f)(1).

**Facts**

10. In March of 2006, Time Magazine reported that U.S. Marines might have been involved in a massacre of unarmed civilians in Haditha, Iraq. The magazine reported that Marines attached to the 1st Squad, 3rd Platoon, Kilo Company had allegedly killed civilians in Haditha, Iraq, in violation of both domestic and international law. *See*, *e.g.*, Jeffrey Kluger, *How Haditha Came to Light*, TIME, June 12, 2006, at 28; Tim McKirk, *Collateral Damage or Civilian Massacre in Haditha?*, TIME, Mar. 19, 2006. Subsequent reports revealed that senior officers were suspected of seeking to suppress information about these killings. *See*, *e.g.*, Michael Gawenda, *US Winces as Haditha Echoes My Lai*, THEAGE.COM.AU, June 3, 2006.

11. In order to ensure that the American public would have access to all unclassified information relating to the Defense Department's investigations of the killings of civilians in Haditha and elsewhere, plaintiffs submitted a request under the Freedom of Information Act in June of 2006. Plaintiffs believe that the public has a right to know whether the Haditha incident was aberrational or, as some news reports have suggested, part of a broader pattern.

12. There has been extensive public and media interest regarding the Haditha incident. *See, e.g.*, Jeffrey Kluger, *How Haditha Came to Light*; TIME, June 12, 2006, at 28; *Our View: Massacre All Too Predictable*, N.Z. HERALD, June 6, 2006, at

A12; Michael Duffy, *The Shame of Kilo Company*, TIME, June 5, 2006, at 30; Thomas E. Ricks, *Iraqi Civilian Deaths Stunned Brass: Marine Corps' Official Story Is Unaltered after 6 Months*, MERCURYNEWS.COM, June 4, 2006; Michael Gawenda, *US Winces as Haditha Echoes My Lai*, THEAGE.COM.AU, June 3, 2006; Eric Schmitt and David Cloud, *Military Inquiry Said to Oppose Account of Raid*, N.Y. TIMES, May 31, 2006, at A1; Thomas Watkins, *Lawyer: Officers Not Targeted in Iraq Probe. Investigation of Iraqis' Killings Focuses on Marines*, CHI. SUN-TIMES, May 31, 2006, at 32; David Williams, *Bush Rocked by Probe, Points the Finger at Marines for Killing Iraqis*, DAILY MAIL (UK), May 31, 2006, at 10; *Press 1st to Tell Bush of Iraq Civilian Deaths*, CHI. TRIB., May 31, 2006, at 12; *Rep. John Murtha: Pentagon Tried to Hide Haditha*, NPR.COM, May 30, 2006; Richard A. Oppel Jr. and Mona Mahmoud, *The Struggle for Iraq: Iraqis' Accounts Link Marines to the Mass Killing of Civilians*, N.Y. TIMES, May 29, 2006, at A1; Aparisim Ghosh, *On Scene: Picking Up the Pieces in Haditha*, TIME.COM, May 29, 2006; Andrew Buncombe, *Marines Went on Killing Spree after Death of Comrade*, SUNDAY INDEP. (UK), May 28, 2006, at 4; *Marines Probed in Iraq Death Held at Base*, WTOP.COM, May 28. 2006; Tony Perry and Julian Barnes, *Marines Execute Iraqis, Photos Indicate*, SEATTLE TIMES, May 27, 2006 at A1; Otto Kreisher, *Reported Slayings of Civilians Bringing Top Marine to Iraq*, SAN DIEGO UNION-TRIB., May 26, 2006, at A25; Tony Perry, *Probe Finds Marines Killed Unarmed Iraqi Civilians*, L.A. TIMES, May 26, 2006, at 1; Thom Shanker, Eric Schmitt, and Richard A. Oppel Jr., *The Struggle for Iraq: The Investigation: Military Expected to Report Marines Killed Iraqi Civilians*, N.Y. TIMES, May 26, 2006, at A1; *Officials Say Marine Confessed to Killing Innocent Civilian in Hamandiyah*, NBC.COM, May 25, 2006; Christian Lowe, *Murtha: Marines Killed*

*Haditha Civilians in Cold Blood*, ARMY TIMES, May 18, 2006; Tim McGirk, *Collateral Damage or Civilian Massacre in Haditha*, TIME.COM, Mar. 19, 2006. There is also widespread media and public concern over the broader issue of civilian deaths in Iraq and Afghanistan. *See, e.g.*, Barry Bearak, *Uncertain Toll in the Fog of War: Civilian Deaths in Afghanistan*, N.Y. TIMES, Feb. 10, 2002, at A1; Tom Baldwin, *Inquiry into Civilian Deaths*, TIMESONLINE.CO.UK, Mar. 22, 2006; *100 Dead in Afghan Attacks, House Panel to Review Iraq Firefight Inquiry*, DESERET NEWS, May 22, 2006, at A02; Geoffrey York, *Grenade Attack Killed Soldier: Shrapnel from RPG Hit Female Officer Standing in Hatch of Armoured Vehicle, Military Sources Say*, GLOBE & MAIL (Canada), May 19, 2006, at A1.

**Plaintiffs' FOIA Request**

13. On June 22, 2006, plaintiffs submitted a FOIA request to the DoD and to several of its components. Plaintiffs addressed the request to the DoD FOIA office. Plaintiffs also sent the request to Chief of Naval Operations, Commandant of the Marine Corps, and the U.S. Army FOIA office.

14. The request sought "all records relating to the killing of civilians by U.S. forces in Iraq and Afghanistan since January 1, 2005." Plaintiffs requested all records, including but not limited to "incident reports, death certificates, autopsy reports, post-mortem reports, investigative files, documents related to criminal proceedings, documents related to administrative proceedings, witness interviews, statistical documents, policy documents (including 'rules of engagement'), paperwork for compensatory payments to relatives of victims, photographs, and videos." Plaintiffs did not "seek the release of records that the government has already publicly disclosed."

15. Plaintiffs also sought a waiver of document search, review, and duplication fees on the ground that disclosure of the requested records is in the public interest and "is likely to contribute significantly to the public understanding of activities or operations of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

**Plaintiffs' Entitlement to Expedited Processing**

16. The FOIA provides that requests characterized by a "compelling need" are to receive expedited processing, in accordance with regulations promulgated by the queried agency. 5 U.S.C. § 552(a)(6)(E). Under the expedited processing provision of the FOIA, as well as the corresponding regulation promulgated by DoD, "compelling need" includes cases in which "the information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity." 32 C.F.R. § 286.4(d)(3)(ii); *see also* 5 U.S.C. § 552(a)(6)(E)(v)(II).

17. As set forth in plaintiffs' FOIA request, plaintiffs are entitled to expedited processing under applicable statutory and regulatory standards. The ACLU is "primarily engaged in disseminating information" to the public within the meaning of the statute and regulations. 5 U.S.C. § 552(a)(6)(E)(v); 32 C.F.R. § 286.4(d)(3)(ii). The ACLU publishes newsletters, news briefings, right-to-know handbooks, and other materials that are disseminated to the public. These materials are widely available to everyone, including tax-exempt organizations, not-for-profit groups, law students and faculty, for no cost or for a nominal fee through its public education department. The ACLU also disseminates information through its heavily visited website, www.aclu.org.

The website addresses civil liberties and human rights issues in depth, provides features on civil liberties and human rights issues in the news, and contains thousands of documents that relate to the issues addressed by the ACLU. The website includes prominent features on information obtained through the FOIA. *See*, *e.g.*, www.aclu.org/patriotfoia; www.aclu.org/torturefoia. Between January and July of 2007 more than four million unique visitors accessed the ACLU's website.

18. Plaintiffs have already disseminated the records they obtained through the FOIA request that is the subject of this action. In December 2006, the Department of the Army produced hundreds of claims for damages – totaling 1,753 pages of documents – by family members of civilians killed or injured by Coalition Forces in Iraq and Afghanistan. The documents are on plaintiffs' website, and are available in searchable form. *See* http://www.aclu.org/natsec/foia/search.html. Many news stories have been written about the released documents. *See*, *e.g.*, Jon Tracy, Op-Ed, *Sometimes in War, You Can Put a Price on Life*, N.Y. TIMES, May 16, 2007; *An innocent old man, yet they shot him: So far US forces in Iraq have paid out $32m for 'wrongful deaths'. Karzan Sherabayani went back to Kirkuk to ask why his uncle had to die*, OBSERVER (UK), May 6, 2007; Jacki Lyden, *The Iraq War's Civilian Toll*, NATIONAL PUBLIC RADIO, Apr. 15, 2007; Ian Bruce, *The Price of Iraqi or Afghan Life is as Little as GBP250*, HERALD (UK), Apr. 13, 2007; Paul von Zielbauer, *The Reach of War Civilian Claims On U.S. Suggest the Toll of War*, N.Y. TIMES, Apr. 12, 2007; Mark Tran, *US compensation payments to Iraqi civilians made public*, GUARDIAN UNLIMITED, Apr. 12, 2007. The Campaign for Innocent Victims in Conflict ("CIVIC"), an organization specializing in civilian casualties in Iraq and Afghanistan, has published a report analyzing the documents

plaintiffs have put in the public domain and has offered recommendations to resolve the problems attendant to the claims processes that came to light by virtue of the plaintiffs' release of the documents. *See* CIVIC, *Adding Insult to Injury: US Military Claims System for Civilians*, May 31, 2007, *available at* http://www.civicworldwide.org/storage/civic/documents/civic%20military%20claims%20white%20paper.pdf. Plaintiffs will continue to make records released through this FOIA request available to the public.

19. There is an "urgent need" to inform the public about civilian deaths in Iraq and Afghanistan. The DoD has gone to unprecedented lengths to control information about the human costs of war. *See, e.g.*, Matthew Pennington, *U.S. Military: Censorship was Justified*, ASSOCIATED PRESS, Mar. 10, 2007 (soldiers erased journalists' footage of civilian deaths in Afghanistan); Gregg Zoroya, *Return of U.S. War Dead Kept Solemn, Secret*, USA TODAY, Dec. 30, 2003 (U.S. government banned photographers on U.S. military bases from covering the arrival of caskets containing the remains of soldiers killed overseas); Josh White and Bradley Graham, *Military Says It Paid Iraq Papers for News, Possible 'Improprieties' to Be Investigated*, WASH. POST, Dec. 3, 2005 (U.S. government paid Iraqi journalists to write positive accounts of the U.S. war effort); Howard Kurtz, *Embedded Reporter's Role In Army Unit's Actions Questioned by Military*, WASH. POST, June 25, 2003 (U.S. government invited U.S. journalists to "embed" with military units but required them to submit their stories to the military for pre-publication review); Paul Workman, *Embedded journalists versus "unilateral" reporters*, CBC NEWS ONLINE, Apr. 7, 2003 (U.S. government's embedding policy was, according to some reports, meant to co-opt the embedded journalists and make

independent and objective reporting more difficult); Edward Epstein, *How many Iraqis died? We may never know, Some observers are pressuring Pentagon to put forth an informed estimate*, SAN FRANCISCO CHRONICLE, May 3, 2003 (U.S. government has refused to disclose statistics on civilian casualties); *see also* Richard C. Paddock, *Antiwar Speakers on Campus are Lecturers, Not Students, This Time*, L.A. TIMES, July 5, 2007 (noting that there are few student protests against the Iraq war in part because "the Bush administration has been skillful in limiting the fallout at home by controlling visual images of the war dead and declining to release information on the number of Americans wounded or the number of Iraqi casualties"). The public has a right to such information in order to assess the legality and wisdom of government conduct. Intentional and reckless killings of civilians violate both domestic and international law. Requests for information bearing upon potential violations of law require an immediate response so that steps may be taken to ensure any violations cease and future violations are prevented.

20. DoD's regulations implementing FOIA specify that information is "[u]rgently needed" where the information "has a particular value that will be lost if not disseminated quickly" – a criterion that is generally met by "a breaking news story of general public interest." 32 C.F.R. § 286.4(d)(3)(ii)(A). Here, there is extensive public and media interest in the killing of civilians in the wars in Iraq and Afghanistan.

21. In support of their request for expedited processing, plaintiffs cited dozens of news articles – including the articles described in paragraph 12 above.

22. Uncovering and disseminating information about civilian deaths in Iraq and Afghanistan is a matter of continuing public interest and urgent concern. Providing

the public with additional and uncensored information about civilian deaths is critical to the public's ability to understand and monitor the wars in Iraq and Afghanistan.

23. Furthermore, in light of the news reports alleging the reckless or intentional killing of civilians, expedited processing is also appropriate because the request relates to "humanitarian need," and "the disclosing of the information [requested] will promote the welfare and interest of mankind." 32 C.F.R. § 286.4(d)(3)(iv).

**Defendants' Failure to**
**Disclose the Records Sought**

24. Defendants are improperly withholding the records sought by plaintiffs' FOIA request. Despite the passage of more than fourteen months since the filing of the request, plaintiffs have received documents only from the Department of the Army and have not received records from any other component of DoD.

25. By email dated June 28, 2006, DoD advised plaintiffs that their FOIA request was being referred to U.S. Central Command ("CENTCOM"). By letter dated June 15, 2007, CENTCOM denied plaintiffs' request for expedited processing and denied plaintiffs' request for a waiver of fees and limitation of fees and requested that plaintiffs submit a written commitment to pay fees. By letter dated August 14, 2007, plaintiffs asked CENTCOM to estimate the amount of fees that may be involved before plaintiffs would agree to pay any amount.

26. By letter dated June 29, 2006, the Department of the Navy referred plaintiffs' FOIA request to the Department of the Navy Criminal Investigative Service ("NCIS"). By letter dated July 21, 2006, NCIS denied plaintiffs' request for expedited processing.

27. By letter dated December 6, 2006, Marine Forces Central Command referred plaintiffs' FOIA request to CENTCOM.

28. By letter dated August 30, 2006, the Department of the Army denied plaintiffs' request for expedited processing.

29. By letters dated September 5, 2006, November 30, 2006, June 25, 2007, July 12, 2007, and July 25, 2007, the Department of the Army produced records responsive to plaintiffs' FOIA request.

30. By letters dated July 13, 2007, and July 31, 2007, plaintiffs administratively appealed withholdings contained in the Department of the Army's productions of June 25, 2007, and July 25, 2007, respectively. The Department of the Army has not provided plaintiffs' a determination of their administrative appeals within the statutorily required time period. Therefore plaintiffs have exhausted their administrative remedies.

## CAUSES OF ACTION

### First Cause of Action: Violation of the FOIA for Failure to Make Promptly Available the Records Sought by Plaintiffs' Request

31. Defendant's failure to make promptly available the records sought by plaintiffs' request violates the FOIA, 5 U.S.C. § 552(a)(3)(A), and the corresponding agency regulations.

### Second Cause of Action: Violation of the FOIA for Failure Timely to Respond to Plaintiffs' Request

32. Defendant's failure timely to respond to plaintiffs' request violates the FOIA, 5 U.S.C. § 552(a)(6)(A), and the corresponding agency regulations.

**Third Cause of Action:**
**Violation of the FOIA for Failure to Expedite**
**the Processing of Plaintiffs' Request**

33. Defendant's failure to expedite the processing of plaintiffs' request violates the FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), and the agency regulation promulgated thereunder, 32 C.F.R. § 286.4(d)(3).

**Requested Relief**

WHEREFORE, plaintiffs pray that this Court:

A. Order defendant immediately to process plaintiffs' request in its entirety;

B. Order defendant, upon completion of such expedited processing, to disclose the requested records in their entirety and make copies available to plaintiffs;

C. Enjoin defendants from charging plaintiffs fees for the processing of their request;

D. Award plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

E. Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

Nasrina Bargzie*
Ben Wizner*
Jameel Jaffer*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: 212-549-2517
Fax: 212-549-2651
nbargzie@aclu.org

* Motions for the admission *pro hac vice* of Ms. Bargzie, Mr. Wizner, and Mr. Jaffer will be filed after this complaint is docketed.

/s/ *Arthur B. Spitzer*

________________________________

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
of the National Capital Area
1400 20th Street, N.W. , Suite 119
Washington, DC 20036
Tel. (202) 457-0800
Fax (202) 452-1868
artspitzer@aol.com

September 4, 2007

07-1557 ESH

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

American Civil Liberties Union
American Civil Liberties Union Foundation

88888

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**

United States Department of Defense

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Arthur B. Spitzer
American Civil Liberties Union
1400 20th Street, NW, Suite 119
Washington, DC 20036
202-457-0800 ext. 113

ATTORNEYS (IF KNOWN)

Case: 1:07-cv-01557
Assigned To : Huvelle, Ellen S.
Assign. Date : 9/4/2007
Description: FOIA/Privacy Act

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ⦿ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT |
|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 |
| Citizen of Another State | ○ 2 | ○ 2 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 |
| Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. *Antitrust*

- ☐ 410 Antitrust

### ○ B. *Personal Injury/ Malpractice*

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ○ C. *Administrative Agency Review*

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. *General Civil (Other)* OR ○ F. *Pro Se General Civil*

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(3)

| O G. *Habeas Corpus/ 2255* | O H. *Employment Discrimination* | ⦿ I. *FOIA/PRIVACY ACT* | O J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☒ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O K. *Labor/ERISA (non-employment)* | O L. *Other Civil Rights (non-employment)* | O M. *Contract* | O N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⦿ 1 Original Proceeding   O 2 Removed from State Court   O 3 Remanded from Appellate Court   O 4 Reinstated or Reopened   O 5 Transferred from another district (specify)   O 6 Multi district Litigation   O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

5 U.S.C. § 552. Defendant wrongfully refuses to release government records or to expedite Plaintiffs' FOIA request.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** ______   Check YES only if demanded in complaint   **JURY DEMAND:** YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

**DATE** September 4, 2007   **SIGNATURE OF ATTORNEY OF RECORD** [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

**I.** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

**III.** CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.** CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

**VI.** CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.** RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.